LAND, J.
On March 20, 1903, W. R. Guess was appointed and qualified as receiver of the Dugdamonia Shingle & Lumber Company, Limited (hereinafter styled the “Sawmill Company”), with the consent of the board of directors, evidenced by resolution as provided by paragraph 8, § 1, p. 313, of Act No. 159 of 1898. The judgment of appointment was offered in evidence, but we have been unable to find it in the record. It is noted on the order book that the judgment was signed and filed, but neither this nor any other order of court ■ in' the receivership was entered “at large” on the order book, as required by section 8, p. 315, of Act No. 159 of 1898. It is, however, admitted that the order of appointment conferred on the receiver full powers of administration and authorized him to borrow the sum of $1,000 for the purpose of operating the plant.
The New Orleans Railway & Mill Supply Company (hereinafter styled the “Supply Company”) had sold to the Sawmill Company machinery and’ supplies to the amount of about $5,000, and prior to the appointment of the receiver had instituted a sequestration suit to enforce its vendor’s privilege. Other creditors had also sued. It seems that the sawmill plant had been sold to W. R. Guess, but was by him retroceded to the Sawmill Company on March 19, 1903, the day before the receiver was appointed.
The Supply Company filed a petition to set aside the appointment of the receiver on various grounds, but the issue thus raised was never determined by the court.
The Supply Company filed an opposition or intervention in the proceedings, setting forth the indebtedness due by the Sawmill Company and praying for judgment, with recognition of its vendor’s privilege on the machinery sold, part of which, it was alleged, had been removed by the receiver. In December, 1903, the receiver obtained an order for the sale of the plant, and on January 22, 1904, the court ordered the sale as prayed for. On the petition of the Supply Company, the court ordered that the machinery on which it claimed a vendor’s privilege be appraised and sold separately, which was accordingly done. In April, 1904, judgment was rendered i'n favor of the Supply Company for $3,156, with interest, and the receiver was ordered to place said company on his final account as a creditor for said sum. The judgment further recognized the vendor’s privilege of the Supply Company on the proceeds of the sale of the machinery to the amount of $1,915, subject to any higher privilege, if any shall exist.
On June 22, 1903, the receiver filed a statement, which it is admitted has been lost or mislaid, showing a profit of $221.44. This statement is noted on the order book as filed, but neither the order book nor the record disclose that this statement was approved by the court.
On October 27, 1903, the receiver filed an *245 other statement of his gestión between June 20 and October 26, 1903. This statement shows expenses $7,492.75, and shipments of lumber, $6,716.81, and other assets, making a total of $8,654.86; the result being a balance of profit, $1,162.11. The record does not show that this statement was approved by the court.
On January 26, 1904, the receiver filed several statements, to wit: (1) Expenses, repairs, construction, and supplies, $1,627.56, with a memorandum that there was on hand a good deal of timber, paid for, but not cut, and about $700 of lumber; (2) itemized bills payable, $1,8S9.65; (3) pay roll from April 1, 1903, to January 26, 1904, $6,856.09; logs delivered at mill, 1,891,592 feet, cost, $7,991.-87; (4) shipments of lumber, $13,715.91, and lumber on hand, $902.72; making a total of 1,768,213 feet of lumber.
At the foot of the last statement is the following “N. B.” by the bookkeeper, viz.:
“Tou will observe, by taking the logging up to June 20th and compare it with shipments and lumbei' on hand at that time, you can see where you were skinned to about 280,000 (feet) logs. The scale has gained from July 4th on, but not enough to overcome the shortage, as you will see.”
These statements were filed February 3, 1904, but the order book does not show that they were ever approved by the judge.
We have searched the record in vain to find an opposition filed by the Supply Company' to the above-mentioned statements. The near-est approach to an opposition are statements in several motions or rules on the receiver to produce books, bills of lading, invoices, account sales, etc., that the opponent expected to prove that the lumber produced $2,000 more than was credited to the mill, and a statement, in the opposition asserting the vendor’s privilege, that the receiver had dis-v posed of some parts of the machinery sold by the Supply Company to the Sawmill Company.
The.parties, however, went to trial as on opposition filed, and the result was a judgment disallowing certain items, aggregating $480.60, referring the alleged loss of 280,000 feet of logs to the final account, and approving the receiver’s account in all other respects. The Supply Company has appealed, and the receiver has answered, praying that the judgment be amended so as to approve the statements as filed and to condemn the Supply Company to pay costs.
Section 9, p. 315, of Act No. 158 of 1898, provides as follows:
“Receivers shall, when vested with powers of administration, file quarterly statements of their gestión, unless oftener required, showing accurately the condition of the business conducted by them; and when not so vested, they shall file annual accounts. Notice of this filing of such statements or accounts shall be entered ’in the order book. No statement shall be approved by the court until ten days after entry of such notice, and no account shall be homologated until after publication as provided in ease of administrators of successions or syndics of insolvents.”
The purpose of the statement referred to above is to show accurately the condition of the business at the end of every three months, for the information of the court and the parties in interest.
Such a statement may be likened to a trial balance, showing results, rather than details. The two first statements conform to this view. The third statement should have shown the conduct of the business from October 26, 1903, to January 26, 1904. But the statements filed February 3, 1904, after the decree of sale, make no such showing, but constitute practically an accounting for all moneys received from the beginning of the receivership, with the result of a balance of $1,857.49 in favor of the receiver. Under the heading of “Bills Payable” appear the names of five creditors, with claims aggregating $1,889.65. The approval of the statements as they stand would settle the accounts of the receiver and would recognize the claims of said creditors. It was surely not intended \.hat the final accountability of the receiver and the rights of *247 creditors should be fixed by the approval of the quarterly statements of the receiver. During the trial of the opposition the statements were referred to as an “account,” and the judgment recognizes and approves it as an “account.” In our opinion, such was the nature of the last statements, and due notice of the filing should have been given by publication, as required by the statute.
Whether considered as a statement or as an account, it is supported by the testimony of the receiver alone, who did not keep the books, and his bookkeeper, who was also manager, was not called upon to verify and explain the entries. The receiver was a member of the firm of Guess & Swanson, who operated a sawmill in the vicinity. It is shown beyond question, not only by the testimony of the receiver, but by his books, that Guess & Swanson financed the receivership and purchased all the lumber shipped by the receiver, except a few car loads. Guess, the receiver, sold to Guess & Swanson, and the relations between buyer and seller demand the production of clear and positive proof that the full market price for every car load was paid by the firm.
The receiver should be required to support his bare assertion that his firm made no profit out of th^se transactions by convincing corroborative evidence of the sales made by or through Guess & Swanson.
The case should not be decided by piecemeal, and we therefore will not review the judgment as to the minor items disallowed.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and it is now ordered that the receiver, W. R. Guess, do file, within 10 days from the date of the finality of this decree, a full, fair, and complete account of his administration of his trust; and it is further ordered that said receiver pay the costs of this proceeding in both courts.